UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GEORGE SARAFIANOS, *et al.*

           Plaintiffs,

   - against -

SHANDONG TADA AUTO-PARKING CO.,
LTD.,

          Defendant.

SHANDONG TADA AUTO-PARKING CO.,
LTD.,
          Third-Party Plaintiff,

   -against-

CORINTHIAN PARTNERS, L.L.C. and
K&L GATES LLP,

          Third-Party Defendants.

------------------------------------------------------------X

**OPINION AND ORDER**

**13-cv-3895 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/19/14

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

      Third-Party Plaintiff Shandong Tada Auto-Parking Co., Ltd.

("Shandong") has filed a Third-Party Complaint ("Complaint") against Corinthian

Partners, LLC ("Corinthian") and K&L Gates LLP ("K&L Gates") (together,

"defendants"), alleging securities fraud,[1] common law fraud, and negligent misrepresentation.  Defendants now seek dismissal of the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, defendants' motions are GRANTED and the Complaint is DISMISSED in its entirety.

## I.   BACKGROUND

### A.   The Investors's Complaint

Shandong is the defendant in a pending action brought by a group of investors (the "Investors") asserting a claim for breach of contract relating to a Purchase Agreement entered into in January 2011.  An understanding of the Investors's allegations helps place Shandong's third-party action in context.[2]  The Investors allege that in 2010 in Beijing, Shandong signed a non-binding Term Sheet with Corinthian, which summarized the proposed terms of a bridge loan

---

[1]     The Complaint does not specify whether the securities fraud claim is premised on state or federal law.  But Shandong appears to agree in its opposition to the motions that its claim is brought under section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (together "section 10(b)"), and there is no private right of action for securities fraud under New York law.  *See CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 275-76 (1987).

[2]     The following is based on this Court's Opinion and Order in *Sarafianos v. Shandong Tada Auto-Parking Co., Ltd.*, No. 13 Civ. 3895, 2014 WL 3057948 (S.D.N.Y. July 7, 2014).

Shandong intended to obtain through Corinthian.  The Term Sheet states that it "is not intended to be and should not be construed as a commitment to lend. . . .  The final documentation . . . will be subject to approval by [Shandong], Corinthian, and the Lenders."[3]

The Investors allege that Shandong sold and issued to them debentures pursuant to the Purchase Agreement.  The Purchase Agreement provided the Investors with the option of converting all or part of the debentures into shares of a holding company to be created by Shandong for the purpose of a reverse merger.  Each of the Investors transferred funds to Shandong through Shandong's Escrow Agent, K&L Gates.  The loan was to mature on September 30, 2011 or on a later negotiated financing date.  No new financing date was negotiated and Shandong has not repaid the Investors.  The Investors seek the return of their initial investment plus interest.  They do no seek shares of the holding company.

### B.    Facts[4]

---

[3]     *Id.* at *1 (quotation marks omitted).

[4]     The facts are drawn from the Complaint.  Well-pleaded factual allegations are presumed true for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  However, many of the allegations in the Complaint consist of conclusory statements or threadbare recitals of causes of action, and are not entitled to the presumption of truth.  *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

While the Investors's breach of contract claim may seem straightforward, Shandong contends that it never entered into the Purchase Agreement, and did not know it existed until after the Investors brought suit.[5] Shandong admits that it entered into the Term Sheet with Corinthian, acting as agent, but claims that it never heard from Corinthian again after execution of the Term Sheet.[6]

The Purchase Agreement was signed by David Dodge, allegedly acting in the capacity of Shandong's Chief Financial Officer. Dodge also signed the debentures, an Escrow Agreement designating K&L Gates Escrow Agent, and a Form D Notice of Exempt Offering of Securities with the United States Securities and Exchange Commission. All of these documents were prepared by K&L Gates. However, Shandong disavows having had any relationship with David Dodge and K&L Gates or authorizing its entry into the Purchase Agreement or any of the other transaction documents.[7] The Complaint states that while

---

[5]     *See* Complaint ¶¶ 2, 55.

[6]     *See id.* ¶¶ 15, 24-26, 46.

[7]     *See id.* ¶¶ 31-33, 39, 42-44.  Shandong's assertion that it had never heard of David Dodge and that he was not associated with Shandong conflicts with the Term Sheet which states that Shandong would "[h]onor the terms of the CFO consulting agreement between the Company and David Dodge dated September 14, 2010."  The CFO Consulting Agreement is not attached as an exhibit to either the Investors's or Shandong's respective complaints.  Likewise, the Term Sheet

"Shandong Tada Auto-Parking Co., Ltd." is written in English in the Purchase Agreement and other deal documents, the corresponding Chinese characters refer to "Beijing Xuanyixing Bio-Technology Co., Ltd." or "Tianjin City Tianyi Seamless Steel Tube Manufacturing Co., Ltd."[8]

The Complaint alleges that Corinthian, acting either directly or through David Dodge, improperly and without Shandong's knowledge or consent signed the transaction documents.[9]  The Complaint states that Corinthian controlled Dodge who it retained "to sign [documentation], in pretense as a representative of Shandong."[10]  The Complaint also alleges that K&L Gates authored the deal documents without Shandong's authorization or knowledge.[11]

The Complaint states that defendants "misrepresented the non-binding nature and effect of the Term Sheet in the process of procuring Plaintiffs'

---

belies Shandong's assertions about K&L Gates.  It states that Shandong will "[h]onor the terms of the engagement letter between the Company [*i.e.*, Shandong] and K&L Gates LLP dated July 20, 2010."  The engagement letter is also not part of the record.

[8]    Complaint ¶¶ 54, 58, 60.

[9]    *See id.* ¶¶ 6-7, 34-36, 46-48, 64-66.

[10]   *Id.* ¶ 64.

[11]   *See id.* ¶¶ 41-45.

investments."[12]  And the Complaint alleges that defendants had motive and opportunity to commit fraud because they were compensated for their work on the transaction, and that defendants "committed fraud with the intent to decei[ve] the [Investors.]"[13]

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor."[14]  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[15]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]  Plausibility

---

[12]     *Id.* ¶ 72.

[13]     *Id.* ¶¶ 8, 51-53, 77, 80, 82.

[14]     *Simms v. City of New York*, No. 11 Civ. 4568, 2012 WL 1701356, at *1 (2d Cir. May 16, 2012) (citing *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).

[15]     *Iqbal*, 556 U.S. at 679.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[16]     *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

requires "more than a sheer possibility that a defendant has acted unlawfully."[17]

When deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[18]  A court may also consider a document that is not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[19]  When a securities fraud complaint alleges that material misstatements or omissions were made in public documents required to be filed with the SEC, a court may take judicial notice of such documents, as well as "related documents that bear on the adequacy of the disclosure . . . ."[20]

## B.    Heightened Pleading Standard for Fraud Claims

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be alleged with particularity, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

---

[17]    *Id.* (quotation marks omitted).

[18]    *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[19]     *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

[20]    *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). *Accord Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

The Private Securities Litigation Reform Act of 1955 ("PSLRA") adds that in private securities fraud cases the complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."[21]  In addition, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[22]

### C.   Leave to Replead

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[23]  Although "[t]he Court should freely give leave when justice so requires,"[24] it is "within the sound discretion of the district court to grant or deny leave to amend."[25]

When a motion to dismiss is granted, "'[i]t is the usual practice . . . to

---

[21]     15 U.S.C. § 78u-4(b)(1)(B).

[22]     *Id.* § 74u-4(b)(2).

[23]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[24]     Fed. R. Civ. P. 15(a)(2).

[25]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

allow leave to replead.'"[26]  But where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile.[27]

## III.   APPLICABLE LAW

### A.   Securities Fraud

Section 10(b) of the Exchange Act prohibits using or employing, "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance . . . ."[28]  Rule 10b-5 makes it illegal to "make any untrue statement of a material fact or to omit to state a material fact . . . in connection with the purchase or sale of any security."[29]

To sustain a claim for securities fraud under Section 10(b), "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission;

---

[26]     *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[27]     *See Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[28]     15 U.S.C. § 78j(b).

[29]     17 C.F.R. § 240.10b-5.

(5) economic loss; and (6) loss causation."[30]  To satisfy the first element, a securities fraud plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[31]

A plaintiff may establish scienter by alleging facts that either (1) show that the defendant had both the "motive and opportunity" to commit the alleged fraud, or (2) "constitute strong circumstantial evidence of conscious misbehavior or recklessness."[32]  "When the defendant is a corporate entity, . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter."[33]  The Supreme Court instructs that scienter is adequately pled when "'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"[34]

---

[30]     *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

[31]     *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).  *Accord* 15 U.S.C. § 78u-4(b)(3)(A).

[32]     *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006).

[33]     *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

[34]     *Matrixx Initiatives, Inc. v. Siracusano*, ---- U.S. -----, 131 S.Ct. 1309, 1324-25 (2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

"Reliance *by the plaintiff* upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action."[35]  To plead loss causation, a plaintiff must allege that "the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."[36]

### B.    Common Law Claims

### 1.    Common Law Fraud

The elements of a fraudulent misrepresentation claim are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."[37]  These elements essentially mirror those involved in a section 10(b) claim.[38]

---

308, 324 (2007)).

[35]    *Stoneridge Inv. Partners*, 552 U.S. at 159 (emphasis added).

[36]    *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).

[37]    *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). *Accord Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009) ("The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.").

[38]    *See, e.g.*, *Marini v. Adamo*, 995 F. Supp. 2d 155, 197 (E.D.N.Y. 2014); *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 298 (S.D.N.Y. 2011).

A claim for fraudulent concealment or omission requires the same allegations as a fraudulent misrepresentation claim, along with "an allegation that the defendant had a duty to disclose material information and that it failed to do so."[39]  But "'[a] duty to speak cannot arise simply because two parties may have been on opposite sides of a bargaining table when a deal was struck between them, for under New York law, the ancient rule of *caveat emptor* is still alive and well.'"[40]

### 2.    Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must allege that

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.[41]

---

[39]    *Mandarin Trading, Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) (quotation marks omitted).

[40]    *IKB Intern. S.A. v. Bank of Am. Corp.*, 584 Fed. App'x 26, 26 (2d Cir. 2014) (quoting *Brass v. American Film Techs, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

[41]    *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012) (quotation marks omitted).

"[L]iability in the commercial context is 'imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'"[42]

## IV.   DISCUSSION

### A.   The Complaint Does Not State a Claim Under Section 10(b)

As this case shows, section 10(b) does not apply to every alleged fraud involving securities.  To give rise to a claim, the fraud most be connected in a meaningful way to the purchase or sale of securities.  Thus, courts in this Circuit routinely reject attempts to transform putative fraud or breach of contract claims

---

[42]       *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)).  *Accord Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) ("[P]laintiff's complaint implies a relationship between the parties that extended beyond the typical arm's length business transaction: defendants initiated contact with plaintiffs, induced them to forebear from performing their own due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information."); *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 608 (S.D.N.Y. 2013) ("[A] standard lender-borrower relationship is not the kind of special relationship that supports a claim of negligent misrepresentation."); *DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ 318, 2009 WL 2242605, at *33 (S.D.N.Y. July 27, 2009) ("Although a broker-client relationship can evolve into a special relationship, the mere fact that [the defendant] and the plaintiffs had a broker-client relationship does not in and of itself create a special or fiduciary relationship.") (quotation marks omitted); *Prestige Foods, Inc. v. Whale Sec. Co., L.P.*, 243 A.D.2d 281, 282 (1st Dep't 1997) (holding that entry into preliminary agreement was a "conventional business relationship" that did not give rise to a fiduciary duty).

into section 10(b) claims.[43]

One reason the conduct alleged in the Complaint is not actionable under section 10(b) is that the alleged fraud does not relate to an investment decision made by Shandong.[44] While defendants' alleged conduct may have

_____

[43]    *See, e.g.*, *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) ("It is not sufficient to allege fraud in a transaction in which a security is a part."); *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984) (finding that pledge of securities as collateral for a loan too remote to satisfy the 'in connection with' requirement of Rule 10b-5); *In re Refco Capital Markets, Ltd. Brokerage Customer Sec. Litig.*, 586 F. Supp. 2d 172, 179 (S.D.N.Y. 2008) (holding that plaintiffs – holders of non-discretionary trading accounts at brokerage – did not have standing to assert section 10(b) claim when brokerage purchased and sold the securities in plaintiffs' accounts without their approval, leading to "hundreds of millions of dollars in losses" in those accounts, because the brokerage's trading activity was not done for plaintiffs' benefit but instead for its own); *Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham Co., Inc.*, 770 F. Supp. 176, 180-81 (S.D.N.Y. 1991) (stating that where an employee of a stock transfer agent stole stock certificates owned by customer, reissued certificates to himself and then sold them, that "[a] fraudulent change in ownership" does not "constitute sufficient basis for finding a sale of securities"); *Bochicchio v. Smith Barney, Harris Upham & Co.*, 647 F. Supp. 1426 (S.D.N.Y. 1986) (concluding that defendant's unauthorized sales of securities and conversion of the proceeds was no more than a conversion of property that happened to involve securities and not actionable under section 10(b) because the defendant did not make any misrepresentation or omission regarding the nature and characteristic of the securities involved).

[44]    *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Chemical Bank*, 726 F.2d at 943 (stating that "[t]he purpose of [Section] 10(b) and Rule 10b-5 is to protect persons who are deceived in securities transactions – to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be"); *Manufacturers Hanover*, 770 F. Supp. at

14

affected the *Investors's* investment decisions, it could not have affected

*Shandong's* investment decisions.  Indeed, Shandong alleges that it did not know

about the Purchase Agreement until 2014, years after it was executed.[45]

Another problem is that only actual purchasers or sellers of securities

have standing to bring private damages claims under section 10(b).[46]  Shandong

lacks standing because it does not allege that it was either a purchaser or seller of

securities.  While Shandong argues that it has standing under the "forced sale"

doctrine set forth in *Vine v. Beneficial Finance Co.*, *Vine* is inapposite.[47]

In *Vine*, a minority shareholder was considered a forced seller because

the corporation had required minority shareholders to sell their shares for cash or

else their stock would become worthless.[48]  The limited exception set forth in *Vine*

---

181 ("[T]he in connection with requirement mandates that the alleged fraud
concern the fundamental nature of the [securities]: namely, characteristics and
attributes that would induce [an] investor to buy or sell the particular securities.")
(quotation marks omitted).

[45]     *See* Complaint ¶ 55.

[46]     *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31
(1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 462-63 (2d Cir. 1952).

[47]     374 F.2d 626 (2d Cir. 1967).

[48]     *See id.* at 634-35.  *Accord Mayer v. Oil Field Sys. Corp.*, 721 F.2d 59,
65 (2d Cir. 1983) ("[W]hen a stockholder has been forced by fraudulent means into
a situation where he has no alternative to disposing of his stock for cash, Rule
10b-5 applies even though he has not actually sold his stock.").

– if still viable after *Blue Chip Stamp* – only applies when the plaintiff's

investment position has been fundamentally altered by a forced sale.[49]  However,

Shandong has not – and cannot – allege that its investment position has been

fundamentally altered by an alleged forced sale.

Finally, the section 10(b) claim must be dismissed as to K&L Gates

for the independent reason that the thrust of the Complaint is that K&L Gates was

acting as Corinthian's agent when it prepared the Form D and other documents.

But holding K&L Gates liable for this conduct would be contrary to the holding of

*Central Bank of Denver v. First Interstate Bank of Denver*.[50]  In *Central Bank*, the

Supreme Court held that section 10(b) imposes liability only on persons who,

themselves, make a material misstatement or omission, and that there is no liability

---

[49]     *See Mayer*, 721 F.2d at 65 ("The plaintiffs in *Birnbaum* ended up after
the alleged fraud exactly where they had begun – holders of Newport stock.  The
plaintiffs in *Blue Chip* likewise ended up after the alleged fraud exactly where they
had begun – non-holders of Blue Chip Stock.  [Plaintiff] began as owner of limited
partnership interests in partnerships owning oil and gas properties and ended up
after the alleged fraud as a stockholder of Integrated, with the partnerships owning
no physical assets.").  *Accord  7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*,
38 F.3d 211, 229 (5th Cir. 1994) (concluding that "a securities exchange, such as
in the case at bar, may constitute a forced sale for purposes of section 10(b) and
Rule 10b-5 if the plaintiff can demonstrate a fundamental change in the nature of
the investment.") (quotation marks omitted).

[50]     511 U.S. 164 (1994).

for aiding and abetting fraudulent conduct.[51]  As the Complaint does not allege that any misstatement was attributable to K&L Gates as opposed to a party it represented, K&L Gates cannot be held liable under section 10(b).[52]

### B.    The Complaint Does Not Plead the Elements of Securities Fraud

Shandong's Complaint must also be dismissed because it fails to plead several elements of a section 10(b) claim and lacks the specificity required by Rule 9(b) and the PSLRA.  For example, many of the key allegations are pled on information and belief.  Under the PSLRA, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."[53]  The Complaint's conclusory and speculative allegations do not satisfy this requirement.

---

[51]    *See id.* at 177.

[52]    *See id.  See also Janus Capital Grp., Inc. v. First Derivative Traders*, --- U.S. ----, 131 S. Ct. 2296, 2302 (2011) (holding that only a maker of a statement can be liable under Rule 10b-5 and explaining that "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."); *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 155 (2d Cir. 2007) ("[U]nderstanding that [a secondary actor] is at work behind the scenes does not create an exception to the requirement that an actionable misstatement be made by the [secondary actor].  Unless [that] understanding is based on [that actor's] articulated statement, the source for that understanding – whether it be a regulation, an accounting practice, or something else – does not matter.").

[53]    15 U.S.C. § 78u-4(b)(1)(B).

### 1.    The Complaint Fails to Allege a Material Misrepresentation

The most specific allegation of a misrepresentation is that defendants "misrepresented the non-binding nature and effect of the Term Sheet in the process of procuring Plaintiffs' investments."[54]  However, this allegation does not satisfy Rule 9(b) or the PSLRA in that it fails to identify a specific statement, the maker of the statement, and where or when the statement was made.[55]

### 2.    The Complaint Fails to Allege Scienter

The Complaint's scienter allegations consist almost entirely of legal conclusions that are not entitled to a presumption of truth.[56]  Generalized allegations that defendants committed the fraud to generate fees are insufficient as a matter of law.[57]  Given the ease with which the alleged fraud could have been

---

[54]    Complaint ¶ 72.

[55]    The allegations that defendants made material misrepresentations, and provided misleading information are legal conclusions that need not be accepted as true.  *See, e.g.*, Complaint ¶¶ 8, 28.  They also lack the specificity required under Rule 9(b) and the PSLRA.

[56]    *See, e.g.*, Complaint ¶¶ 77 (defendants acted with "intent to defraud"), 79 (defendants "had the motive and opportunity to commit fraud").

[57]    *See Alki Partners, L.P. v. Windhorst*, 472 Fed. App'x 7, 10 (2d Cir. 2012) ("[A] desire to earn transactional fees . . . is [not] sufficient to establish scienter."); *Friedman v. Arizizona World Nurseries Ltd. P'Ship*, 730 F. Supp. 521, 532 (S.D.N.Y. 1990) (same), *aff'd*, 927 F.2d 594 (2d Cir. 1991); *In re College Bound Consol. Litig.*, No. 93 Civ. 2348, 1995 WL 450486, at *12 (S.D.N.Y. July 31, 1995) (same).

detected, it was incumbent on Shandong to allege some plausible motive for the fraud beyond the opportunity to earn transaction fees.  Lacking this, the Complaint does not give rise to the required strong inference of scienter.[58]

### 3.    The Complaint Fails to Allege Reliance and Loss Causation

The Complaint fails to allege that *Shandong* relied on any of Corinthian's or K&L Gates's alleged misrepresentations or omissions.  Instead, the Complaint alleges that the *Investors* relied on these misrepresentations or omissions.  In addition, Shandong does not allege that a misstatement or omission affected the value of a security.

### C.    The Complaint Fails to Plead the Required Elements of Common Law Fraud and Negligent Misrepresentation

### 1.    The Complaint Fails to Plead Common Law Fraud

Shandong does not separately address defendants' arguments regarding its common law fraud claim, and instead relies on its arguments in connection with the section 10(b) claim.  The failure to allege that *Shandong* – rather than the *Investors* – relied on defendants' misrepresentations or omissions is

---

[58]    In addition, the Complaint fails to allege that K&L Gates was reckless or knew any statements that it made were false.  For example, the Complaint does not allege that K&L Gates was aware that David Dodge was not authorized to sign agreements on behalf of Shandong.  Thus, the most plausible inference to be drawn from the Complaint is that K&L Gates – like the investors – believed that Dodge had been appointed as Shandong's Chief Financial Officer and was authorized to act on Shandong's behalf.

fatal to Shandong's claim for common fraud law.[59]  Moreover, because Shandong

claims that it was not aware of the Purchase Agreement until 2014, it could not

have relied on any misrepresentations or omissions concerning the Purchase

Agreement.[60]

   The Complaint also does not state a claim for fraudulent concealment

or omission.  This is because the Complaint does not allege that defendants owed

*Shandong* a duty to disclose material information.  Instead, the Complaint alleges

---

[59] The Second Circuit has held that allegations of third-party reliance are insufficient to state a fraud claim under New York law.  *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008) (interpreting New York law on third-party reliance); *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo,* 148 F.3d 194, 196 (2d Cir. 1998) (holding that "a plaintiff does not establish the reliance element of fraud for purposes of . . . New York law by showing only that a third party relied on a defendant's false statements.").  There is disagreement about  whether these opinions are consistent with *Eaton, Cole & Burnham Co. v. Avery*, 83 N.Y. 31 (1880), *Rice v. Manley*, 66 N.Y. 82 (1876), and *Bruff v. Mali*, 36 N.Y. 200 (1867).  But this purported conflict is unfounded, and *Lollo* and *Smokes-Spirits.com* remain controlling.  *See generally Pasternack v. Laboratory Corp. of Am.*, No. 10 Civ. 4426, 2014 WL 4832299, at *17-18 (S.D.N.Y. Sept. 29, 2014) (explaining that "[i]n *Eaton* and *Bruff*, the Court of Appeals addressed the question of whether a defendant could be held liable for misrepresentations made to a third party, which were then communicated by the third party to the plaintiff" and that "[t]he issue before the *Rice* court [ ] was whether plaintiffs had suffered a legally cognizable injury, and not whether a fraud claim could be premised on misrepresentations made to a third party").

[60] *See* Complaint ¶¶ 46, 55.  Shandong also disavows having had knowledge of the Escrow Agreement.  *See id.* ¶¶ 47-48, 55.

that Corinthian – but not K&L Gates – owed the *Investors* a duty of disclosure.[61]

### 2.   Failure to Plead Negligent Misrepresentation

As a threshold matter, Shandong has conceded that the Complaint does not state a claim for negligent misrepresentation by not addressing defendants' arguments for dismissal of this claim.  Furthermore, the Complaint fails to allege, *inter alia*, that defendants had a special relationship with Shandong or that Shandong relied on any false statements made by defendants.[62]

### D.   Leave to Amend

Shandong neither requested leave to amend nor responded to defendants' arguments seeking dismissal with prejudice.  However, it would be inappropriate to dismiss the fraud and negligent misrepresentation claims with

---

[61]   *See id.* ¶¶ 29 (stating "[u]pon information and belief, Corinthian breached its fiduciary duties to the Plaintiffs [*i.e.*, the Investors]"); 50 ("Upon information and belief, Corinthian owed Plaintiffs a fiduciary duty as broker, dealer and manager of their funds."), 87 (stating that defendants "misrepresented material facts concerning the nature and validity of the Term Sheet, and failed to disclose to Plaintiffs that approval is required by Shandong before any valid investment could be made or transactions be finalized, which facts were known to [defendants] to be materially important for the investors").

[62]   *See Mandarin Trading Ltd.*, 16 N.Y.3d at 179 (affirming dismissal of negligent misrepresentation claim where "[r]ather than alleging that [defendant] misrepresented his ownership to [plaintiff] specifically, an insufficient, general allegation is proffered that [defendant] was required to disclose his interest because he should have known that a hypothetical purchaser would rely on the appraisal letter").

21

prejudice because their dismissal is based entirely on a failure of pleading. At the same time, certain of the defects warranting dismissal of the section 10(b) claim – *e.g.*, lack of standing – cannot be cured by repleading. Accordingly, the section 10(b) claim is dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, defendants' motions are GRANTED and the Complaint is DISMISSED in its entirety. The section 10(b) claim is dismissed with prejudice. Any amended pleading must be filed no later than January 12, 2015. The Clerk of Court is directed to close these motions [Docket Nos. 50 and 54] and the third-party action.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 19, 2014

22

**-Appearances-**

**For Plaintiffs:**

Robert S. Bernstein, Esq.
Bernstein-Burkley, P.C.
707 Grant Street, Suite 2200
Pittsburgh, Pennsylvania 15222
(412) 456-8101

**For Third-Party Plaintiff:**

Yi Lin, Esq.
Law Office of Yi Lin
86 Bowery, Suite 201
New York, NY 10013
(212) 964-5339

**For Third-Party Defendant Corinthian Partners LLC:**

Peter R. Silverman, Esq.
Donald F. Schneider, Esq.
Silverman Shin Byrne & Gilchrest PLLC
381 Park Avenue South
New York, NY 10016
(212) 779-8600

**For Third-Party Defendant K&L Gates LLP:**

Frederick B. Warder, III, Esq.
Melissa R. Ginsberg, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2121