**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X

GEORGE SARAFIANOS, *et al.*

              **Plaintiffs,**

    - against -

SHANDONG TADA AUTO-PARKING CO.,
LTD.,

              **Defendant.**

------------------------------------------------------------

SHANDONG TADA AUTO-PARKING CO.,
LTD.,
              **Third-Party Plaintiff,**

    -against-

CORINTHIAN PARTNERS LLC, K&L
GATES LLP, and DAVID DODGE,

              **Third-Party Defendants.**

------------------------------------------------------------ X

|  |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 5\|8\|15 |

**OPINION AND ORDER**

**13-cv-3895 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

      Third-Party Plaintiff Shandong Tada Auto-Parking Co., Ltd.

("Shandong") has filed an Amended Third-Party Complaint ("Complaint") against

Corinthian Partners LLC ("Corinthian"), K&L Gates LLP ("K&L"), and David

Dodge.  The claims asserted against K&L are for common law fraud and

misrepresentation, breach of the implied covenant of good faith and fair dealing,

unjust enrichment, and an equitable accounting.  K&L seeks dismissal of each

claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the

following reasons, K&L's motion is GRANTED in its entirety and the Complaint

is DISMISSED with prejudice as to K&L.

## I.      BACKGROUND

### A.      The Investors's Complaint[1]

Shandong is the defendant in a pending action brought by a group of

investors (the "Investors") asserting a claim for breach of contract relating to a

Purchase Agreement entered into in January 2011.  The Investors allege that in

2010 in Beijing, Shandong signed a non-binding Term Sheet with Corinthian,

which summarized the proposed terms of a bridge loan Shandong intended to

obtain through Corinthian.  The Term Sheet states that it "is not intended to be and

should not be construed as a commitment to lend. . . .  The final documentation . . .

will be subject to approval by [Shandong], Corinthian, and the Lenders."[2]

The Investors allege that Shandong sold and issued to them

---

[1]      The following is based on this Court's Opinion and Order in
*Sarafianos v. Shandong Tada Auto-Parking Co., Ltd.*, No. 13-cv-3895, 2014 WL
3057948 (S.D.N.Y. July 7, 2014).

[2]      *Id.* at *1 (quotation marks omitted).

2

debentures pursuant to the Purchase Agreement.  The Purchase Agreement

provided the Investors with the option of converting all or part of the debentures

into shares of a holding company to be created by Shandong for the purpose of a

reverse merger.  Each of the Investors transferred funds to Shandong through

Shandong's Escrow Agent, K&L.  The loan was to mature on September 30, 2011

or on a later-negotiated financing date.  A new date was not negotiated and

Shandong has not repaid the Investors.  The Investors seek the return of their initial

investment plus interest.  They do no seek shares of the holding company.

### B.       Shandong's First Complaint

Shandong admits that it entered into the Term Sheet with Corinthian,

but contends that the Purchase Agreement and other loan  documents were entered

into without its authorization or knowledge.  On August 29, 2014, Shandong filed

a Third-Party Complaint against Corinthian and K&L, alleging securities fraud and

common law fraud and misrepresentation.  On December 19, 2014, I dismissed

Shandong's claims.  The securities fraud claims were dismissed with prejudice

because they could not be cured by repleading, but the fraud and misrepresentation

claims were dismissed without prejudice "because their dismissal [was] based

entirely on a failure of pleading."[3]  On January 12, 2015, Shandong filed the

---

[3]       *Sarafianos v. Shandong Tada Auto-Parking Co., Ltd.*, No. 13-cv-3895, 2014 WL 7238339, at *6 (S.D.N.Y. Dec. 19, 2014).

3

Complaint.

### C.    Facts[4]

Shandong entered into a non-binding Term Sheet with Corinthian in

Beijing China in 2010.[5]  Under the Term Sheet, Corinthian was to assist Shandong

in securing a bridge loan in the United States.  Shandong expected it would have an

opportunity to approve the terms of any loan after further negotiations.  But

Corinthian ceased communications with Shandong after the execution of the Term

Sheet, and therefore Corinthian did not and could not have received any further

approvals from Shandong for any transaction.[6]

Corinthian retained David Dodge to assume the position of Chief

Financial Officer for Shandong without Shandong's authorization.[7]  Shandong had

no prior knowledge of Dodge, who was never an employee of Shandong and never

---

[4]      The facts are drawn from the Complaint.  Well-pleaded factual
allegations are presumed true for the purposes of this motion.  *See Ashcroft v.
Iqbal*, 556 U.S. 662, 679 (2009).  However, many of the allegations in the
Complaint consist of conclusory statements or threadbare recitals of causes of
action, and are not entitled to the presumption of truth.  *See Bigio v. Coca-Cola
Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

[5]      *See* Compl. ¶¶ 13, 14.

[6]      *See id.* ¶¶ 15-16, 22-25, 27- 29.

[7]      *See id.* ¶¶ 56, 60.

4

served any position at the company.[8]  On January 14, 2011, Dodge signed the Purchase Agreement and an Escrow Agreement on behalf of Shandong.[9]  Dodge also filed a Form D Notice of Exempt Offering of Securities with the Securities and Exchange Commission, in which he represented that he was the Chief Financial Officer of Shandong.[10]  Shandong contends that Dodge acted improperly because he was not Shandong's Chief Financial Officer and was not authorized to sign the Purchase Agreement and Escrow Agreement on Shandong's behalf.[11]

K&L authored both the Purchase Agreement and the Escrow Agreement.[12]  But Shandong never authorized and was not aware of either the Purchase Agreement or the Escrow Agreement.[13]  In fact, it was "Corinthian [that] retained Defendant K&L Gates LLP as counsel" and "K&L did not contact Shandong directly a single time."[14]  Nevertheless, the Complaint asserts that Shandong "relied on an attorney such as K&L to provide a professional legal

---

[8]   *See id.* ¶¶ 56-60.

[9]   *See id.* ¶¶ 56, 79-83.

[10]   *See id.* ¶¶ 85-88.

[11]   *See id.* ¶¶ 79-83, 88.

[12]   *See id.* ¶ 91.

[13]   *See id.* ¶¶ 2-7.

[14]   *Id.* ¶¶ 7, 37.  *See also id.* ¶ 90 ("K&L was retained by Corinthian").

5

service and escrow service."[15]

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor."[16]  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[17]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[19] Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be alleged with particularity, although "[m]alice, intent, knowledge, and

---

[15]   *Id.* ¶ 45.

[16]   *Simms v. City of New York*, No. 11 Civ. 4568, 2012 WL 1701356, at *1 (2d Cir. May 16, 2012) (citing *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).

[17]   *Iqbal*, 556 U.S. at 679.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[18]   *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

[19]   *Id.* (quotation marks omitted).

other conditions of a person's mind may be alleged generally."

When deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[20]  A court may also consider a document that is not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[21]

### B.    Leave to Replead

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[22]  Although "[t]he Court should freely give leave when justice so requires,"[23] it is "within the sound discretion of the district court to grant or deny leave to amend."[24]

---

[20]     *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[21]     *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

[22]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[23]     Fed. R. Civ. P. 15(a)(2).

[24]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

When a motion to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[25]  But where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile.[26]

## III.   APPLICABLE LAW

### A.   Common Law Fraud

The elements of a fraudulent misrepresentation claim are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."[27]

A claim for fraudulent concealment or omission requires the same allegations as a fraudulent misrepresentation claim, along with "an allegation that the defendant had a duty to disclose material information and that it failed to do

---

[25]     *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[26]     *See Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[27]     *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). *Accord Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009) ("The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.").

so."[28]  But "'[a] duty to speak cannot arise simply because two parties may have been on opposite sides of a bargaining table when a deal was struck between them, for under New York law, the ancient rule of *caveat emptor* is still alive and well.'"[29]

**B.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

"To state a breach of contract claim under New York law, a plaintiff must allege: (1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4) damages resulting from the breach."[30]  "Under New York law, the implied covenant of good faith and fair dealing inheres in every contract."[31] However, breach of this implied covenant is "merely a breach of the underlying

---

[28]    *Mandarin Trading, Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) (quotation marks omitted).

[29]    *IKB Intern. S.A. v. Bank of Am. Corp.*, 584 Fed. App'x 26, 26 (2d Cir. 2014) (quoting *Brass v. American Film Techs, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

[30]    *MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.*, Nos. 14-cv-7091, 14-cv-7973, 2015 WL 221055, at *3 (S.D.N.Y. Jan. 15, 2015) (citing *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).

[31]    *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994) (citing *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*, 30 N.Y.2d 34, 45 (1972)).

contract," not a separate cause of action.[32]

## C.   Unjust Enrichment

To prevail on a claim for unjust enrichment under New York law, plaintiff must demonstrate "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."[33]  "An indispensable ingredient of such a claim is that as between the two parties involved there must be an injustice."[34]

## D.   Equitable Accounting

"In order to sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary or confidential relationship with the defendant."[35]  Where a party bringing an action for an accounting has "failed to

---

[32]   *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quotation marks omitted).

[33]   *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

[34]   *Songbird Jet Ltd., Inc. v. Amax, Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 1984) (explaining that "[t]he doctrine of unjust enrichment rests upon an equitable principle that a person should not be allowed to enrich himself at the expense of another").

[35]   *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) (citing *Palazzo v. Palazzo*, 503 N.Y.S.2d 381, 384 (1st Dep't 1986)).  *Accord KJ Roberts & Co. v. MDC Partners Inc.*, No. 12 Civ. 5779, 2014 WL 1013828, at *12 (S.D.N.Y. Mar. 14, 2014) (holding that accounting is not available where the relationship between the parties consisted of an arm's length

allege the existence of a fiduciary or otherwise confidential relationship . . . the accounting claim merits dismissal."[36]

## IV.   DISCUSSION

### A.   The Complaint Fails to Plead a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

In the absence of a valid and binding contract, Shandong cannot seek damages for breach of the implied covenant of good faith and fair dealing.[37]  Not only does Shandong fail to allege a contract between it and K&L, it explicitly disavows that one exists.[38]  Accordingly, Shandong's claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

While Shandong now contends that the Escrow Agreement is a valid

---

business deal).

[36]      *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) (citing *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010)).

[37]      *See Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (recognizing that the absence of an express contract disposes of a claim for breach of good faith and fair dealing); *Garrett v. Music Publ'g Co. of Am., LLC*, 740 F. Supp. 2d 457, 463 (S.D.N.Y. 2010) ("There can be no breach of contract, or the implied covenant of good faith and fair dealing, without a governing valid contract."); *Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 493 (S.D.N.Y. 2004) ("[T]here can be no breach of the duty of good faith and fair dealing where there is no valid and binding contract from which such a duty would arise.") (quotation marks omitted).

[38]      *See* Compl. ¶¶ 7, 21, 55, 90.

contract of which it is a third-party beneficiary, the Complaint does not support this argument.[39]  The Escrow Agreement purports to be an agreement among Shandong, the Investors, and K&L.  Because the Complaint alleges that Shandong was not a party and did not authorize anyone to enter into the Agreement on its behalf, the only plausible inference is that the Escrow Agreement is invalid.

Finally, irrespective of whether there was a valid Escrow Agreement, the facts alleged do not fit the theory of a claim for breach of the implied covenant of good faith and fair dealing.  A proper claim under this theory would be that K&L "'hindered[ed] or obstruct[ed]' the [ ] performance" of a valid contract that inured to Shandong's benefit.[40]  In contrast, the heart of the Complaint is that the Escrow Agreement should not have been entered into in the first place because Shandong was not aware of it, did not approve of it, and did not participate in it. And the heart of the allegations that relate specifically to K&L is that had K&L contacted Shandong directly (at some point), Shandong would have been aware of the alleged fraud by Corinthian and Dodge.  If K&L had contacted Shandong, it

---

[39]    *See* Memorandum of Law of Shandong Tada Auto-Parking Co., Ltd. in Opposition to Motion to Dismiss by K&L Gates LLP, at 3-4 ("Shandong's lack of knowledge does not render the Escrow Agreement invalid.").

[40]    *Europacific Asset Mgmt. Corp. v. Tradescape Corp.*, No. 03-cv-4556, 2005 WL 497787, at *6 (S.D.N.Y. Mar. 2, 2005) (quoting *Wolff Munier, Inc. v. The Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1007 (2d Cir. 1991)).

might have uncovered the alleged fraud.  But the Complaint does not plausibly

suggest any obligation or reason — contractual or otherwise — for K&L to have

contacted Shandong or, as is relevant to this claim, that the failure to do so even

remotely implicates the implied covenant of good faith and fair dealing.

**B.      The Complaint Fails to Plead Fraud and Misrepresentation**

The Complaint alleges that K&L never communicated with Shandong.

Accordingly, the only potentially viable fraud theory advanced by Shandong is a

failure to disclose material information.  The Complaint baldly states that "K&L

knew or should have known that Dodge had not received the authorization from

Shandong."[41]  But the facts alleged do not support a plausible inference that K&L

knew or was reckless about the falsity of any representations or the truth of any

facts that it failed to disclose.  The Complaint does not identify any facts

suggesting that K&L had access to information indicating that Dodge was not

authorized to act on Shandong's behalf.  Indeed, the Complaint does not identify

any document or other source of information that would have revealed Dodge was

not authorized to act on Shandong's behalf.  As I found in connection with the first

Complaint, the most plausible inference from the allegations "is that K&L — like

the investors — believed that Dodge had been appointed as Shandong's Chief

---

[41]      Compl. ¶ 121.

13

Financial Officer and was authorized to act on Shandong's behalf."[42]

        In addition, there is no basis to infer from Shandong's allegations that K&L owed Shandong a duty to disclose.  Shandong alleges that it was Corinthian — not Shandong — that retained K&L.[43]  Shandong alleges that the Escrow Agreement was unauthorized and invalid.[44]  Even under the terms of the Escrow Agreement, there was no duty to report directly to Shandong.

## C.    The Complaint Fails to Plead a Claim for Unjust Enrichment

        The Complaint alleges that Corinthian retained K&L and that Shandong never had any contact with K&L.[45]  It is not surprising therefore that the Complaint fails to allege that K&L was enriched *at Shandong's expense*.  Although the Complaint alleges that K&L "received compensation for its legal services relating to drafting of the [Purchase] Agreement and Escrow Agreement and acting as Escrow [Agent,]" the Complaint does not allege that Shandong provided such

---

[42]    *Sarafianos*, 2014 WL 7238339, at *5 n.58.

[43]    *See* Compl. ¶¶ 7, 21, 55, 90.

[44]    *See id.* ¶¶ 6, 21, 29, 31, 42.  Furthermore, even if K&L owed a duty to Shandong and K&L had the requisite fraudulent intent, the Complaint fails to allege reliance.  The allegations are that K&L never communicated with Shandong, not that Shandong and K&L were in communication but K&L omitted to disclose a material fact.  Finally, Shandong fails to allege a causal link between any of K&L's omissions and a harm suffered by Shandong.

[45]    *See id.* ¶¶ 7, 37, 90.

14

compensation to K&L.[46]  Thus the Complaint fails to allege facts that suggest that K&L obtained a benefit rightfully belonging to Shandong.

### D.    Shandong Is Not Entitled to an Equitable Accounting

The accounting claim is now moot.  On March 24, 2015, K&L delivered to Shandong an accounting of the funds that were deposited and withdrawn from the escrow account that was established in connection with the Escrow Agreement.[47]

### E.    Dismissal Is with Prejudice

Leave to amend should be freely given "when justice so requires."[48] However, Shandong has already amended its Complaint once following dismissal on a motion under Rule 12(b)(6), and it is clear from the foregoing that any further amendment would be futile.

## V.    CONCLUSION

For the foregoing reasons, K&L's motion is GRANTED in its entirety

---

[46]    *Id.* ¶ 55.

[47]    *See* 3/31/15 Declaration of Melissa R. Ginsberg, K&L's counsel, in Support of Third-Party Defendant K&L Gates LLP's Motion to Dismiss, ¶ 2.  I further note that the Complaint fails to allege a plausible fiduciary or confidential relationship between Shandong and K&L. And, even assuming such a duty, the Complaint does not plausibly allege a breach of that duty with respect to property in which Shandong has an interest.

[48]    Fed. R. Civ. P. 15(a)(2).

and the Complaint is DISMISSED with prejudice as to K&L.  The Clerk of Court

is directed to close this motion [Docket No. **76**].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 8, 2015

16

**-Appearances-**

**For Plaintiffs:**

Robert S. Bernstein, Esq.
Bernstein-Burkley, P.C.
707 Grant Street, Suite 2200
Pittsburgh, Pa. 15222
(412) 456-8101

**For Third-Party Plaintiff:**

Yi Lin, Esq.
Law Office of Yi Lin
86 Bowery, Suite 201
New York, NY 10013
(212) 964-5339

**For Third-Party Defendant K&L Gates LLP:**

Frederick B. Warder, III, Esq.
Melissa R. Ginsberg, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2121